"MARGARET BLAIR", Petitioner, *v.* "CHARLES BLAIR", Respondent.[*]

Domestic Relations Court of the City of New York, Family Court, New York County, May 1, 1953.

---

[*] Names used herein are fictitious, for the purposes of publication.

*Morton N. Winkler* for petitioner.

*Albert C. Gilbert* for respondent.

PANKEN, J.  Because of the statutory law governing the Domestic Relations Court of the City of New York, particularly its Family Court Division, many problems seeking solution create anomalous situations.  This court and the Supreme Court of the State of New York have concurrent jurisdiction to determine the extent of provision for support of dependents (wife and children), by one chargeable under law with their support.  Sometimes that creates anomalous situations.

The Supreme Court of the State of New York has jurisdiction and power to issue decrees separating husband and wife from bed and board; it has the power to issue decrees of divorce to end the relationship entered upon by parties to a marriage.  This court neither has the jurisdiction nor the powers to do so.  While the Domestic Relations Court of the City of New York has no power to issue decrees which would separate from bed and board those who have entered upon marital relationship, it however, may where there are children of the marriage, and the court had obtained jurisdiction of the parties, issue what is termed an " order of protection " (N. Y. C. Dom. Rel. Ct. Act, § 92, subds. 7, 8).  In such " orders of protection " the court may provide that the father of a child or of children is not to visit the home of his spouse though his children are residing with her.  The order may set forth other provisions which would protect the wife against annoyance by her husband or engagements in acts of violence toward her or his children.  In effect an order of protection restricting the husband from visiting his wife and children's home amounts to a decree separating the parties to the marital relationship.

As an incidence to the making of an order for the support of a spouse, the court is empowered and is under a duty to inquire into the causes of difficulties which had brought the parties into court.  The Domestic Relations Court Act empowers the court

to make orders for the support of wives who are dependent upon their husbands to meet their needs either on the basis of their likelihood to become a public charge, or on the basis of the means of the husbands. In the first instance the allowance to be granted is to hold the community harmless. The obligation for the support of dependent spouses rests upon the shoulder of one or the other. In the other instance the court may require a husband to provide for his spouse according to his means, his financial ability to do so.

The conduct of either party to a marital relationship may sometimes make it inadvisable or impossible to continue to live together. If the facts warrant, a finding may be had that there was a constructive abandonment by him or her. Where a wife is affected, she would be entitled to support on the basis of the financial ability of her husband to respond for her support as justice in the circumstances may demand. In the case of a husband, he would be entitled to support only to the extent of holding the community harmless.

Subdivision 1 of section 92 provides as follows: " To order support of a wife or child or both, irrespective of whether either is likely to become a public charge, as justice requires having due regard to the circumstances of the respective parties." A wife may become entitled to provisions for herself even if she is not a public charge or is likely to become a public charge as justice requires having due regard to the circumstances of the respective parties. The courts have been loath to make provision for a wife where she is not a public charge and is not likely to become a public charge, if she is gainfully employed or has the means to provide for herself if she abandoned her husband. That seems to me to be in accord with what justice requires and in response to public policy.

In the case before me it is claimed by petitioner that it had become inadvisable and impossible for her to continue to live with her husband; that he had in fact made that impossible for her because of his statement that he no longer loved her; that he had become enamored of another woman; that he would seek a divorce from her; and asking her to agree to a divorce to terminate the marital relationship existing. On the birth of their first child he doubted that it was his, and so informed her. Nevertheless they had two additional children, and he does not question now the paternity of the first child.

Up to the filing of the petition in this court the respondent probably unwillingly, but actually, did provide for his dependents. He continued to provide for his spouse in a limited sense

since the separation. It may be doubtful as to whether he would willingly have provided for her according to his means or otherwise.

The parties are now living separate and apart. They are in fact separated. Their appearance before me clearly shows that there is a complete severance of the marital relationship. The problem to be solved is: Has this court the power by order to require the respondent to contribute to the support of the petitioner though he had up to the filing of the petition provided some support for her? When does the right of a wife accrue to her for support under the Domestic Relations Court Act? On a separation forced upon her by her husband regardless of his having in one or another manner made provision for her, is she entitled to a formal order of this court, or is she required to resort to this court only until such time as her husband will have failed to provide for her and her children's support, when there are children? The law on that score is not clear; has not been passed upon. That creates a problem the law must resolve. The Supreme Court, whether a husband did provide for his spouse in the interim between the separation and the filing of a suit, is empowered by law to issue a decree of separation and to make an award, and if there are children, support for the children. That, it is said, is beyond the power of this court.

The statute provides that the spouse is to be required to make fair and reasonable support for his wife and children. If that provision is to be construed to mean that though the husband has abandoned his wife but is making some provision for her this court has no power to make an order for her support *in futuro,* in my judgment it would be a strained interpretation of the law. The law must always be interpreted in the light of common sense, that common sense which results in justice between parties who have recourse for judicial determination. Where law is applied in derogation of common sense dictates, it fails of its purpose. While the act establishing this court provides specifically that a husband is required to make fair and reasonable provision for his spouse and their children, it does not limit the court to make provision only for failure to support before the proceeding was instituted. When the court obtains jurisdiction of the parties it has the power to make provision for adequate support for dependents in accordance with the law, as is hereinabove set forth.

The parties herein were married in April of 1924, twenty-nine years ago. The youngest child is now twenty-one years old. All told, there are three children. The petition herein was filed in

October of 1934. No action thereon was had since April of 1935, though an order had been entered hereon on or about the 25th of October, 1934, and not complied with. It came on to be heard before me on the 30th of March, 1953.

The testimony in this case discloses a sorry state under which the parties had occupied jointly an apartment with their three children from 1934 to 1950. For six years there was no intercourse between them. Neither talked to the other, except that now and then a question was asked. For fifteen years they did not cohabit as man and wife. Each claims that that was the fault of the other. Both testified that they had made advances and were repulsed, which each of them denies. The petitioner by innuendo charges that the respondent's affections were engaged elsewhere by a certain person named " M ". Respondent denies that he had any illicit relationship with that person; that " M " was a childhood friend. However, at one point he refused to answer a question directed to him as to his relations with " M " after the court had informed him of his right to refuse to answer any questions that might incriminate him or hold him up to obloquy.

The problem is: Was there an abandonment by the petitioner or the respondent or did the conduct of the respondent make it inadvisable, unpleasant and dangerous for her to continue to live with him; has the testimony as adduced established a constructive abandonment by him of her? To abandon either actually or constructively there must be a relationship of husband and wife between the parties. For fifteen years in this case there was no such relationship. Both claimed that. The facts as testified to indicate a situation in the household of the parties herein which was less than a marital relationship and more a state of conditions which might be defined as a convenience in the interests of the children. A constructive abandonment by the respondent might be found on the claimed charge by him that the first child was not his, and that he no longer loved the petitioner. He, however, resumed relations with his wife and she acceded to such relations which resulted in the birth of two more children. That, certainly amounts to a condonation.

Petitioner testified that from the time she was married her life was an unhappy one. It undoubtedly was that and it was the continuous state in which she lived. Respondent too was in that state. The conduct on the part of a spouse, obnoxious, detestable, arrogant, violative of decency makes it impossible for the other to continue to live with that person. In such case it would amount to a constructive abandonment. (*Klein* v. *Klein*, 87

N. Y. S. 2d 293.) In the case of *Sternheim* v. *Sternheim* (174 Misc. 574) this court said: " To permit a spouse to leave her husband and to allow the obligation for her support to continue, despite her leaving him, the court must find as a matter of fact that it is impossible or unsafe for the spouse to continue to live with her husband." An isolated disagreement is not sufficient on which a finding of a constructive abandonment can be predicated. The disagreements here were continuous. While there is no testimony of vocal disagreements, the conduct between the parties undoubtedly establishes disagreement of serious nature.

In the course of the trial the court expressed itself as follows: " I have already concluded that this lady is not entitled to support on the basis of her likelihood to become a public charge. She earns $170 a month * * *. She has a home which she owns in common with her daughter for which $15,000 was paid. All of that precludes me from making an order in her behalf, on the basis of being a public charge or her likelihood to become a public charge ".

The question is: Is she entitled to support on the basis of respondent's means, taking into consideration the circumstances of both, and applying the law in the light of justice to both parties? The respondent contributed to her maintenance in the sum of $40 monthly since she moved from their common home in the building which he owns, taking all except his personal furniture. There was no order requiring him to do so.

That amounts to an admission by him that he owed her an obligation and met it. The law must be applied rather than an admission unless it is reduced to a stipulation or enforcible agreement between the parties.

The petitioner must establish by a preponderance of the evidence her asserted claim, to wit, support from her husband according to his means, though she does not need any help from him. Together with the testimony of the husband she has established the right to support from him. The respondent's refusal to answer the question as to his relationship with " M ", while it is not evidence of misconduct, is nevertheless evidentiary. I conclude that the husband is required to contribute the sum of $50 monthly toward the support of petitioner. Until further order of the court, an order to that effect is made.